UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

**DEANGELO JONES,**
        **Plaintiff,**

        vs                No. 04-1415

**JASPER MESSINA, et al.,**
**Defendants.**

### ORDER

Before the court are the defendants, Stephen Mote, Jasper Messina, Danny McFarlen, French, Jennifer R. Melvin, Wesley G. Wiles' motion to dismiss [24] and Michael Burger's motion to dismiss [28] and the plaintiff's response [37] and [43].

### Standard

It is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519 (1972), *reh'g denied*, 405 U.S. 948 (1972). *See also Tarkowski v. Robert Bartlett Realty Company*, 644 F.2d 1204 (7th Cir. 1980). They can be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521; *Gregory v. Nunn*, 895 F.2d 413, 414 (7th Cir. 1990).

When considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court takes the allegations in the complaint as true, viewing all facts--as well as any inferences reasonably drawn therefrom--in the light most favorable to the plaintiff. *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1326 (7th Cir. 1990). Dismissal should be denied whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by the plaintiff. *Tarkowski*, 644 F.2d at 1207, *quoting Littleton v. Berbling*, 468 F.2d 389 (7th Cir. 1972).

### Background

The plaintiff, DeAngelo Jones, an inmate incarcerated by the Illinois Department of Corrections brings his complaint pursuant to 42 U.S.C. §1983 alleging that defendants at Pontiac Correctional Center violated his civil rights. The plaintiff alleges that defendant, Jasper Messina harassed him because if he [plaintiff] had a problem or concern he would voice it to the sergeant or the lieutenant of the cell house. This would upset Messina, who would in turn harass the plaintiff. So the plaintiff filed grievances, which were all denied. The plaintiff also filed emergency grievances to defendant, Stephen Mote, who determined that the grievances were not emergencies causing the plaintiff to "go through the 3 step process." The plaintiff claims that

"through the filing of grievances to warden Mote, he failed his supervisory duty to properly evaluate, select, instruct and supervise correctional officers, in doing so his acts or inactions deprived me of my constitutionally protected rights."

Because Messina continued to harass the plaintiff, he verbally asked Messina to stop harassing him. Messina response was that he was only doing his job. The plaintiff alleges the harassment continued until it hit its peek on November 20, 2003. That day Messina passed by Joseph Price and the plaintiff who were discussing the killing of another inmate by correctional employees on October 18, 2003. Messina apparently overheard the conversation and said to the plaintiff and Price, "you better shut up or you'll be next. The plaintiff claims that he had been questioned by the Illinois State Police who were investigating the death of the inmate. A short while later, the plaintiff claims that he exited his cell, to go to the law library, without coming into contact with Messina, who was standing in the doorway of the cell. After being in the library for approximately 30 minutes, the plaintiff and Price were escorted back to the cell house. The plaintiff was told to report to the lieutenant's office. Upon his arrival at the lieutenant's office, he was advised that he was gong to solitary confinement for assault. Messina issued a disciplinary ticket against the plaintiff charging him with assault. In the disciplinary ticket, Messina claimed the plaintiff intentionally brushed up against him. The plaintiff claims that Messina's actions were done in retaliation because he used the "Illinois State Constitution, Illinois Complied Statues, and United States Protected Rights."

After a hearing on the assault charges, the plaintiff was found guilty by the Adjustment Committee. The plaintiff's discipline included four months solitary confinement, C-grade, and loss of audio-visual and commissary privileges for four months. After an administrative appeal by the plaintiff, the Administrative Review Board reduced the assault charge to intimidation and threat and reduced the punishment to 3 months.

While he was in segregation, the plaintiff received four disciplinary reports for excessive noise. Two of those reports were written by defendant, Michael J. Burger and two were written by defendant, Danny L. McFarlen. As a result of the charges, the plaintiff was forced to remain behind a perforated cell door and his property, including his legal materials, was taken for three days. The plaintiff claims his property was taken with [out] any hearing and no due process was afforded him before he was kept behind the door. He also claims, Lt. French gave the order to have his property confiscated "along with the other c/o's." The plaintiff claims the actions by Burger and French were done in retaliation because the plaintiff had written several grievances against them.

Further, the plaintiff claims that in connection with the four disciplinary reports for excessive noise, defendants, Wiles and Jennifer Melvin denied him due process: "because his witnesses were denied as irrelevant, refused to consider his witnesses, refused to consider his documentary evidence, being found guilty with no evidence only on the officer's word who wrote the disciplinary reports." The plaintiff also filed grievances on these matters. The plaintiff also claims that Wiles and Jennifer Melvin denied him due process when his assault charges were reduced [to intimidation and threat] because he did not get a 24 hour notice of the

2

"new charges." The plaintiff claims that Wiles and J. Melvin denied him a hearing for the reduced charges. The plaintiff claims that defendants F. Melvin and Stephen Mote approved this "due process hearing by condoning in my deprivation and it was approved by Mote." The plaintiff claims that supervisory liability is imposed on F. Melvin and Mote where an official demonstrates gross negligence or deliberate indifference to the constitutional rights of inmates by failing to act on information indicating that unconstitutional practices are taking place. The plaintiff also claims that the Administrative Review denied him due process when they reduced the charges and his punishment without his receiving a [new] disciplinary report and having an opportunity to appear before the Adjustment Committee to answer the new charges. Based on the court's review of the plaintiff's exhibits, Wiles and Melvin did not reduce the plaintiff's charges. It was the Administrative Review Board that reduced his charges and punishment, without a new hearing and this decision was not confirmed by either F. Melvin or Mote.

Major Francis Melvin supervises the south protective custody where the plaintiff was housed when he was allegedly harassed by Messina. The plaintiff alleges that he complained to Melvin about the alleged harassment by Messina, but Melvin did nothing to stop Messina and it resulted in "false" assault charges against the plaintiff. The plaintiff claims that if Melvin had intervened, the situation could have been avoided. The plaintiff further claims that the defendants conspired willfully, intentionally and with callous indifference to deprive him of his protected rights by retaliating against him because he continued to use his First Amendment Rights of freedom of speech and right to petition the government for redress of grievance.

The plaintiff is seeking punitive, compensatory and nominal damages from the defendant in his official and individual capacity. Plaintiff is also seeking injunctive relief and compensation for his time in confinement and his $10.00 stipend which was withheld.

**Conclusion**

As an initial matter, the Eleventh Amendment bars the plaintiff from recovering money damages against the defendants in their official capacity. *Wynn v. Southward*, 251 F.3d 588, 591 (7th Cir. 2001); *Kentucky v. Graham,* 473 U.S. 159 (1985). An action against a defendant in his or her official capacity is an action against the government entity, in this case the State of Illinois. *See Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001); *Hadi v. Horn*, 830 F.2d 779, 782 (7th Cir. 1987). The Eleventh Amendment of the U.S. Constitution bars suits in federal courts by private parties against states. *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994). Any claims against the defendants in their official capacity are stricken. The Eleventh Amendment to the United States Constitution does not permit those claims.

Questions of due process do not arise until a protected liberty or property interest has been interfered with by the State. *Kentucky Department of Corrections v. Thompson*, 109 S.Ct. 1904, 1908 (1989). Demotion in grade status and placement in segregation do not implicate such

interests. *See Sandin v. Conner*[1], 115 S.Ct. 2293, 2301 (1995)(Finding no liberty interest in avoiding segregation absent a showing of a significant deprivation atypical of prison life); *Whitford v. Boglino*, 63 F.3d 527, 533 n.7 (7th Cir. 1995)(Demotion in grade status does not implicate federal due process rights).  The plaintiff claims that he was denied due process before being placed in segregation.  However the plaintiff does not have a protected liberty interest in avoiding segregation, C-Grade, audio-visual equipment or commissary.  Therefore his claim that he was denied due process before being placed in segregation is dismissed.

The court finds that the plaintiff failed to state a claim for procedural due process because he has suffered no constitutional deprivation regarding the four disciplinary tickets for excessive noise.  *See Kentucky Department of Corrections v. Thompson*, 109 S.Ct. 1904, 1908 (1989). The Constitution does not protect against all arbitrary actions of prison officials, but only those that cause the plaintiff to suffer a deprivation of a constitutionally protected liberty, life or property interest.  *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995)(per curiam); *see also Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) and *see Ponte v. Real,* 471 U.S. 491, 105 S.Ct. 2192 (1985), where the Supreme Court, Rehnquist, J., held that due process requires that prison officials at some point state their reasons for refusing to call witnesses requested by an inmate at a disciplinary hearing but the Constitution does not require that such reasons or support for such reasons must be placed in writing or otherwise exist as part of the administrative record at the disciplinary hearing and that prison officials may make their explanation part of the administrative record or by later presenting testimony in court if the deprivation of a "liberty" interest is challenged because of refusal to call the requested witnesses.  Here, the plaintiff lost neither life nor liberty.  For the first excessive noise ticket, he received a verbal reprimand.  On another he lost audio/visual and commissary privileges for three months.  In his complaint, he only alleges that his property was taken three days and that one legal book was never returned.  In his complaint, the plaintiff claims that when he was taken to segregation, defendant, Lt. French deprived him of his property for three days, plus continued his confinement in isolated confinement cells before a hearing was conducted to prove that he was guilty of disciplinary charges.  The plaintiff claims French deprived him of his property in retaliation of his filing grievances.  As already discussed above, the plaintiff does not have a protected liberty interest in avoiding segregation.  Further, unauthorized intentional deprivation of property by a state employee does not violate due process if a meaningful post-deprivation remedy for the loss is available.  *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 3202 (1984).  The State of Illinois provides an adequate post-deprivation remedy for property lost by prisoners while in the custody of the Department of Corrections.  *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993).  A prisoner may bring an action in the Illinois Court of Claims to recover damages for property taken or destroyed by the Illinois Department of Corrections.  *Stewart* at 1036; 705 ILCS 505/8.  If the plaintiff has been deprived of his property, the State has provided an adequate post-deprivation remedy for plaintiff's claim of lost property and therefore his due process regarding his loss of property as a result of the four disciplinary tickets for excessive noise is dismissed.  However, the plaintiff may proceed on his claim that French retaliated against him for writing

---

[1] *Sandin* was decided after *Wolfe*.  After *Sandin*, a prisoner has no liberty interest in avoiding segregation absent a showing of a significant deprivation atypical of prison life.

4

grievances against him.

Further, plaintiff claims that the Wiles J. Melvin, F. Melvin, Stephen Mote and the Administrative Review Board denied him due process when his assault charges and punishment were reduced without his receiving a [new] disciplinary report and having an opportunity to appear before the Adjustment Committee to answer the new charges. None of the named defendants participated in the Administrative Review Board's decision to reduce the charges. A review of the plaintiff's exhibit (ARB's February 27, 2004 letter to the plaintiff) shows that the assault charges were reduced to intimidation and threat. The ARB noted that the reporting officer had alleged that the plaintiff had intentionally brushed up against the officer as the plaintiff left his cell. The plaintiff does not allege that the elements of the lesser offense were not elements that were included in the original charge. When the elements of the lesser offense are elements that are included in the original charge, failure to provide a new notice to the plaintiff would not violated due process. Furthermore, for the reasons discussed, supra, this claim is dismissed for failure to state a claim upon which relief may be granted, pursuant to Fed R. Civ. Pro. Rule 12(b)(6).

As to the plaintiff's claims that the defendants violated his rights under the First Amendment right to freedom of speech when they issued disciplinary ticket for excessive noise, this claim also fails. First, the plaintiff does not allege that the prison regulation regarding excessive noise is not "reasonably related" to legitimate penological interest. However, the plaintiff claims the excessive noise tickets are enforced under the guise to deny him his right to freedom of speech. The First Amendment rights of inmates are limited. "If inmates have some First Amendment rights, still they have only those rights that are consistent with prison discipline." *Ustrak v. Fairman*, 781 F.2d 573, 580 (7th Cir. 1986). Restrictions on First Amendment rights of other communications to or within the prison are subject to the less rigorous test that they be "'reasonably related to legitimate penological interests.'" *See Thornburgh v. Abbott*, 490 U.S. 401, 412)(1989), *citing Turner v. Safley*, 482 U.S. 78, 89 (1987).

In their motions to dismiss memorandum, the defendants assert that Pontiac Correctional Center implemented a rule to reduce the noise level in the cell houses. The plaintiff does not allege that the policy is not reasonably related to a legitimate and non-punitive governmental interest. Mr. Jones' First Amendment rights of freedom of speech and freedom of association are limited by the rules imposed by Pontiac Correctional Center. The plaintiff argues that the policy was established to keep the inmates from talking. However, Mr. Jones' exhibits show and the defendants argue that he was not disciplined for the content of his speech but rather the manner in which he was speaking. Restrictions relating to the manner of the speech are constitutional. *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S.Ct. 2746 (1989). When accommodation of an inmate's asserted constitutional right will have significant "ripple effect" on fellow inmates, *Turner* warns that courts should be particularly deferential to informed discretion of corrections officials in adopting regulation which impinges on that right. *See also Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (according "wide-ranging deference" to prison officials in adopting and executing discipline policies). Conditions of confinement which are "reasonably related to a legitimate and non-punitive government goal," are not unconstitutional,

5

*Antonelli*, 81 F.3d at 1427-28 (citing *Bell*, 441 U.S. at 539, 99 S.Ct. 1861), and we caution that this court will give a high degree of deference to the discretion of prison administration to "adopt policies and practices to maintain the safety and security of this country's penitentiaries." This court will not go behind the decisions of prison officials in deciding the four tickets for excessive noise. The plaintiff cannot catapult his findings of guilt for excessive noise charges into a First Amendment claim. The plaintiff's claim of violation of his rights under the First Amendment right to freedom of speech concerning the four excessive noise tickets is therefore dismissed pursuant to Fed. R. Civ. Pro. R. 12(b)(6).

The plaintiff claims that Messina harassed him by standing in his cell door, interrupting conversations the plaintiff was engaged in with other correctional officers and writing up a false disciplinary charge against him. The plaintiff alleges that Messina said, "you better shut up or you'll be next" after he overheard the plaintiff discussing the death of another inmate. In his complaint, the plaintiff does not describe these words as a threat; however, in his response, the plaintiff claims that Messina's words were a threat. Here, the plaintiff does not allege that Messina's threat was accompanied by conduct indicating an intention and ability to carry out the threat. Therefore, this court finds the plaintiff's allegations do not permit such an inference that his constitutional rights were violated. The Constitution does not protect against all arbitrary actions of prison officials, but only those that cause the plaintiff to suffer a deprivation of a constitutionally protected liberty, life or property interest. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995)(per curiam). "A merely verbal threat of indefinite action in the indefinite future is not an assault." *Kijonka v. Seitzinger, et al.*, 363 F.3d 645, 646 (7th Cir. 2004). Allegations that an official used vulgar and derogatory language in reference to an inmate is not sufficient to state a claim under 42 U.S.C. 1983. *Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 1999); *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987). Such language is regrettable and unfortunate. Defendant Messina's words and interruptions of the plaintiff's conversations, perhaps while unprofessional and certainly not condoned by the court, do not state a constitutional claim based on due process. This claim of harassment/threat as it relates to due process is dismissed pursuant to Fed.. R. Civ. Pro. Rule 12(b)(6) for failure to state a claim upon which relief may be granted. However, the plaintiff's allegations permit an inference that Messina violated his First Amendment Right to free speech. Messina's alleged words were allegedly in response to the content of the plaintiff's speech. Therefore, the plaintiff may proceed on his claim that Messina violated his rights to freedom of speech under the First Amendment.

The plaintiff claims that the defendant Messina wrote the disciplinary ticket charging him with assault in retaliation of his filing grievances. *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994) ("Issuing false and unjustified disciplinary charges can amount to a violation of substantive due process if the charges were in retaliation for the exercise of a constitutional right."). "Prisoners are entitled to be free from arbitrary actions of prison officials. . . The protections against this arbitrary action, however, are the procedural due process requirements as set forth in Wolff v. McDonnell." *Hanrahan v. Lane*, 747 F.2d 1137, 1138 (7th Cir. 1984), *citing Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Due process required that prisoners in procedure resulting in loss of good-time or in imposition of solitary confinement be afforded advance written notice

of claimed violation, written statement of fact findings, and right to call witnesses and present documentary evidence where such would not be unduly hazardous to institutional safety or correctional goals; confrontation and cross-examination and counsel are not constitutionally required. The plaintiff claims that the Adjustment Committee refused to call his witness "denied evidence used against him." However, his exhibits[2] belie his allegations. The court has reviewed exhibits attached to the plaintiff's exhibit. A review of the November 20, 2003 disciplinary report shows that the plaintiff requested Joseph Price and Lt. Punke as witnesses. The plaintiff signed the disciplinary report on November 20, 2003 showing he received notice on that date. A hearing was held on November 27, 2003. A review of the November 27, 2003 Adjustment Committee Final Summary Report shows that the Adjustment Committee included the plaintiff's witnesses's statements in the Final Summary Report. Further, the committee documented the evidence used against the plaintiff and their basis for the decision which was based on the observation of the reporting officer, Messina, under the section titled "Basis for Decision." As a result, the court finds the plaintiff received due process for the charges of assault. Nevertheless, the plaintiff alleges that the defendant, Messina wrote the disciplinary ticket for assault against him in retaliation for his campaign of writing grievances against Messina and that Messina was aware of the grievances. The plaintiff's retaliation claim against Messina is discussed *infra.*

The plaintiff claim regarding the defendant, Mote refusal to consider the plaintiff's grievance on an emergency basis is dismissed as the plaintiff has no constitutional right to have his grievance heard on an emergency basis. The plaintiff claims that "through the filing of grievances to warden Mote, he failed his supervisory duty to properly evaluate, select, instruct and supervise correctional officers, in doing so his acts or inactions deprived me of my constitutionally protected rights. Mote as the warden of the prison can use his discretion to decide whether or not a grievance would be heard on an emergency basis. His refusal to do so does not become a constitutional violation. Mote merely required the plaintiff to use the "3 step process." This claim is dismissed pursuant to Fed.. R. Civ. Pro. Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

The court turns to the plaintiff's claim of conspiracy between defendants, Frances Melvin and Messina. The plaintiff does not specify whether he is pursuing his conspiracy claim under the conspiracy statute, 42 U.S.C. § 1985(3), or under § 1983. Claims under § 1985(3) "must allege (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege . . ." *Majeske v. Fraternal Order of Police*, 94 F.3d 307, 311 (7th Cir. 1996)(citations omitted); *Brokaw v. Mercer County*, 235 F.3d 1000 (7th Cir. 2000). "'Some racial, or perhaps otherwise class-based, invidiously discriminatory animus'" must also be alleged. *Majeske,* 94 F.3d at 307, *quoting Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993).

§ 1985(3) is not applicable here because the alleged conspiracy was not motivated by race

---

[2]See plaintiff's exhibits attached to his complaint, November 20, 2003 disciplinary report and November 27, 2003 Adjustment Committee Final Summary Report.

7

or other class-based animus.  However, a plaintiff may still proceed under a theory of civil conspiracy pursuant to § 1983, which, "as a practical matter, . . . simply broadens the scope of liability under § 1983 to include individuals who were part of a conspiracy but did not act directly to deprive a plaintiff of his or her constitutional rights."  *Libra v. City of Litchfield*, 893 F.Supp. 1370, 1375 (C.D. Ill. 1995).  To state a civil conspiracy claim under § 1983, the plaintiff must allege that the defendants 1) reached an agreement (express or implied) to deprive the plaintiff of constitutional rights; and 2) the plaintiff suffered "'actual deprivations of those rights in the form of overt acts in furtherance of the agreement.'"  *Id.*, *quoting Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988).  Vague and conclusory allegations of conspiracy are insufficient.  *Amundsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000); *Hanania v. Loren-Maltese*, 212 F.3d 353, 356 (7th Cir. 2000).  The plaintiff claims that the defendants, Frances Melvin and Messina were in conspiracy, but he does not allege that there was a agreement between Melvin and Messina.  Second, what actual deprivation did the plaintiff suffer by any actions or inactions or alleged conspiracy by Frances Melvin.  None.  Plaintiff's claim of conspiracy is based on his allegations that Messina retaliated against him because he filed grievances.  Even if Messina did indeed retaliate against the plaintiff by issuing the disciplinary ticket, his act did not stop the plaintiff from filing grievances, as evidenced by his exhibits and statements made by the plaintiff in his complaint.  Plaintiff has stated a claim of retaliation for filing the grievance by Messina, but he has not suffered a deprivation by any action or inaction of the defendant, Melvin.   Plaintiff's claim of conspiracy against defendants, Messina and Melvin fails.

Further, the plaintiff's claim that Major Francis Melvin retaliated against him fails.  The plaintiff alleges no act of retaliation by Melvin.  He merely concludes that Melvin retaliated against me.  The only conduct the plaintiff claims is that Melvin didn't do anything when he complained that Messina was harassing him.  These allegations do not rise to the level of a constitutional violation.  Further, "[t]he doctrine of *respondeat superior* can not be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights."  *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001), *citing Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).  *See Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001)(no respondeat superior liability under § 1983); *Sanville v. McCaughtry*, 266 F.3d 724, 739 (7th Cir. 2001)(no liability under § 1983 unless personally responsible).  This claim against defendant Melvin is dismissed pursuant to Fed. R. Civ. Pro. Rule 12(b)(6).

The plaintiff may proceed on his claims that the actions by Messina, Burger, McFarlen and French were done in retaliation because the plaintiff had written several grievances.  Retaliation for filing grievances can state a claim under § 1983.  *See Johnson v. Stovall*, 233 F.3d 486, 489 (7th cir. 2000); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).  "The federal courts have long recognized a prisoner's right to seek administrative or judicial remedy of conditions of confinement, . . . as well as the right to be free from retaliation for exercising this right."  *Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996)(citations omitted)(denying qualified immunity for retaliation claim).  Acts which are constitutional can become unconstitutional if done in retaliation for the exercise of a constitutionally protected right.  *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 1999)(citations omitted).  "This is so even if the adverse action does not independently violate the Constitution.  As discussed above, the supervisory defendants

8

cannot be held liable for subordinates' alleged constitutional violations solely because they are in charge.

The plaintiff's claim for injunctive relief is denied. He has failed to state an on-going violation and therefore the plaintiff is not entitled to injunctive relief. The purpose of a temporary restraining order or injunction is to preserve the status quo until a final decision is reached concerning the merits of the case. *American Hosp. Ass'n v. Harris*, 625 F.2d 1328 (7th Cir. 1980). A federal court may only issue injunctive relief when an ongoing constitutional violation is occurring. *Al-Alamin v. Gramley*, 926 F.2d 7680, 685 (7th Cir. 1982); *Green v. Mansour*, 474 U.S. 64, 71 (1985). The plaintiff has not alleged a continual constitutional violation. As a result, this court lacks authority to award injunctive relief requested by the plaintiff.

**It is therefore ordered:**

1. **The defendants' motions to dismiss are granted in part and denied in part [24] and [28].**
2. **The plaintiff may proceed only on his First Amendment claims that (1) Messina, Burger, McFarlen and French retaliated against him because he filed grievances; and (2) Messina violated his right to freedom of speech. Based on the foregoing, plaintiff's claims against the remaining defendants are dismissed. The clerk of the court is directed to terminate the remaining defendants, forthwith.**

**Enter this 23rd day of January 2008.**

s\Harold A. Baker
_____
**Harold A. Baker
United States District Court**