E-FILED
Wednesday, 17 February, 2010 04:42:18 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

DEANGELO JONES,
    Plaintiff,

v.         04-1415

JASPER MESSINA, et al.,
    Defendants.

MEMORANDUM OPINION AND ORDER

Before the court are Defendants' summary judgment motion [75] and the plaintiff's response [102]. In the court's January 23, 2008, it allowed the plaintiff to proceed only on his First Amendment claims that (1) Messina, Burger, McFarlen and French retaliated against him because he filed grievances; and (2) Messina violated his right to freedom of speech.

Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic*

1

*v. K&R Express Systems, Inc.*, 176 F.3d 390, 390 (7th Cir. 1999). Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

Background

Plaintiff DeAngelo Jones is an inmate of the Illinois Department of Corrections who was formerly incarcerated at Pontiac Correctional Center. Pursuant to this court's Order of January 23, 2008 [62], Plaintiff's surviving claims brought pursuant to 42 U.S.C. §1983 and the First Amendment of the United States Constitution are as follows: (1) Plaintiff claims that Defendant Messina violated his right to freedom of speech when Messina allegedly told Plaintiff to "shut up or you'll be next;" and (2) Plaintiff claims that Defendants Messina, Burger, McFarlen, and French retaliated against him for filing grievances. Defendants deny violating Plaintiff's First Amendment rights and seek summary judgment in their favor pursuant to Fed. R. Civ. P. 56(b).

Statement of Undisputed Material Facts[1]

1. Plaintiff was formerly incarcerated at Pontiac Correctional Center, where he alleges that the events giving rise to his First Amendment claims took place. (Complaint at p.4; Deposition of DeAngelo Jones ("Plaintiff's Dep.") at p.4, attached as Exhibit E).
2. Defendants are current or former employees of the Illinois Department of Corrections. As correctional employees, the defendants have a duty to observe the conduct of offenders and prepare disciplinary reports for certain offenses. (Affidavit of Jasper Messina ("Messina Affidavit"), attached as Exhibit A; Affidavit of Michael Burger ("Burger

---

[1]Exhibits can be found attached to Defendants' Memorandum of Law [76] and Plaintiff's Response [102]. The plaintiff attached exhibits to his response, however with respect to the facts, he did not point to any specific exhibits. "Courts are entitled to assistance from counsel [and pro se parties], and an invitation to search without guidance is no more useful than a litigant's request to a district court at the summary judgment stage to paw through the assembled discovery material. 'Judge are not like pigs, hunting for truffles buried in' the record." *Albrechtsen v. Bd. of Regents,*2002 WL 31397690 (7th Cir. 2002), *quoting United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Furthermore, the plaintiff was provided several opportunities to file a response that complies with L. R. 7.1(D), but he has failed to follow the rule in all aspects. The court also notes that during his arguments, he did point to exhibits and those were considered.

Affidavit"), attached as Exhibit B; Affidavit of Danny McFarlen ("McFarlen Affidavit"), attached as Exhibit C; Affidavit of Glendal French ("French Affidavit"), attached as Exhibit D).

3. Plaintiff testified that he felt that Defendant Messina began harassing him as soon as Plaintiff arrived at Pontiac[2]. (Plaintiff's Dep. at p.6).
4. Plaintiff testified that Defendant Messina was constantly coming by his cell, "nitpicking" about the way Plaintiff kept his cell and saying unprofessional things to him, which caused Plaintiff to have to file a grievance. (Plaintiff's Dep. at pp. 6-7).
5. Plaintiff believes his grievance dated August 25 was probably the first grievance he filed about Defendant Messina's conduct. (Plaintiff's Dep. at p.8).
6. In his grievance dated August 25, 2003, Plaintiff wrote "[o]n the above date and dating back to July 2, 2003 C/O [Messina] has been harassing me from the first day of my being here in Pontiac it seems as though he has some sort of problem with me..." (Plaintiff's grievance dated August 25, 2003, attached to his Complaint as an Exhibit and attached as Exhibit F).
7. Plaintiff alleges that during morning count on November 20, 2003, he was discussing the death of another inmate with his cell mate when Defendant Messina walked by and said "shut up or you'll be next." (Plaintiff's Dep. at p.14).
8. Plaintiff alleges that his First Amendment right to Freedom of Speech was violated when Defendant Messina said "shut up or you'll be next." (January 23, 2008 Order [62]).
9. Plaintiff also alleges that the defendants retaliated against him for engaging in constitutionally protected conduct. (January 23, 2008 Order [62]).
10. Defendant Messina denies that he told Plaintiff to "shut up or you'll be next" in an attempt to prevent him from talking to his cell mate about the death of another inmate.[3] (Messina Affidavit).
11. Later that morning, at approximately 8:17 a.m., Defendant Messina keyed open the Plaintiff's cell so Plaintiff could attend the law library. (Messina Affidavit).
12. When exiting his cell, Messina alleges and Plaintiff denies that Plaintiff intentionally brushed against Defendant Messina in a hostile and offensive manner, even though the cell door was completely open to allow his passage without making any physical contact. (Messina Affidavit and Plaintiff's Affidavit [102].
13. The offense 102-Assaulting any Person is defined as "causing a person, substances or an object to come into contact with another person in an offensive, provocative, or injurious manner..." (Messina Affidavit; see also 20 Ill. Adm. Code 504.30 (West 2008)).
14. Pursuant to Departmental Rule 504A, an employee who observes an offender committing offense 102-Assaulting any Person shall promptly prepare a disciplinary report. (Messina Affidavit; see also 20 Ill. Adm. Code 504.30 and APPENDIX A).

---

[2]The plaintiff concedes to facts 3 - 6 and 24, but asserts that they are immaterial; however, the court disagrees and finds these facts are material.

[3]The plaintiff disputes facts 10, but he can't dispute the fact that Messina denies he made certain statements.

15. On November 20, 2003 Defendant Messina prepared a disciplinary report charging Plaintiff with 102-Assaulting any Person. (Messina Affidavit).
16. Defendant Messina prepared the aforementioned disciplinary report because he observed the Plaintiff violate the departmental rule known as 102-Assaulting any Person, and not for any other reason. (Messina Affidavit).
17. Plaintiff was found guilty of the offense, and the discipline imposed included demotion to C Grade, segregation, loss of commissary and loss of audio/visual privileges. (Adjustment Committee Summary attached to Plaintiff's Complaint as an Exhibit and attached as Exhibit G).
18. Offenders housed at Pontiac are issued an Orientation Manual upon their arrival at the facility. (Affidavit of Troy Quinley ("Quinley Affidavit"), attached as Exhibit H).
19. One of the topics addressed in the orientation manual is the facility noise policy. Offenders are notified that yelling and banging on cell doors can result in receipt of disciplinary reports and progressive discipline. (Quinley Affidavit).
20. Each segregation living unit at Pontiac houses between 150 and 300 offenders. (Quinley Affidavit).
21. The purpose of the noise policy is to enable security staff to maintain order and ensure the safety and security of all offenders and staff in the living unit. Without a noise policy and the continued enforcement of said noise policy, the noise level in the living unit would be unacceptably high[4]. (Quinley Affidavit).
22. While housed in the segregation unit at Pontiac, Plaintiff received four disciplinary reports for "excessive noise" including two from Defendant Burger and two from Defendant McFarlen. (Complaint at pp. 5-6).
23. Plaintiff received his first excessive noise ticket from Defendant McFarlen on November 22, 2003. (Dep. at p.22; see also McFarlen Affidavit and the attached disciplinary report dated November 22, 2003).
24. Plaintiff had not filed any grievances complaining of Defendant McFarlen's conduct prior to that day. (Plaintiff's Dep. at pp. 22-24).
25. Defendant McFarlen issued Plaintiff a second ticket for excessive noise on December 14, 2003. (Plaintiff's Dep. at p.24; see also McFarlen Affidavit and the attached disciplinary report dated December 14, 2003).
26. Defendant McFarlen issued Plaintiff the two excessive noise tickets because he observed the Plaintiff yelling and committing the offenses charged, and not for any other reason. (McFarlen Affidavit).
27. Plaintiff testified that he was aware that Defendant McFarlen issued excessive noise tickets to other offenders as well as himself. (Plaintiff's Dep. at p.25).
28. Defendant Burger issued Plaintiff excessive noise tickets on December 13, 2003 and December 27, 2003. (Plaintiff's Dep. at pp. 26-29; see also Burger Affidavit and the attached disciplinary reports dated December 13, 2003 and December 27, 2003).

---

[4]Plaintiff disputes this fact, but does not point to any documentation to support his dispute. Merely stating, as he does in his affidavit, that the policy is used to stop prisoners from talking and has nothing to do with security is just a bald assertion.

29. Plaintiff claims to have filed a grievance complaining of Defendant Burger's conduct prior to receiving either disciplinary report from Defendant Burger. (Plaintiff's Dep. at p.28).
30. Defendant Burger issued Plaintiff the two excessive noise tickets because he observed the Plaintiff yelling and committing the offenses charged, and not for any other reason. (Burger Affidavit).
31. In a letter dated December 30, 2003 to Major Quinley, Plaintiff complained that Defendants Burger and McFarlen were both writing up prisoners for talking. (Letter dated December 30, 2003, attached to Plaintiff's Complaint as an Exhibit and attached as Exhibit I).
32. Plaintiff testified that he is suing Defendant French because Defendant French failed to do his job, as far as responding to problems that were brought to him concerning officers Burger and McFarlen. (Plaintiff's Dep. at p.32).
33. Plaintiff also testified that Defendant French confiscated all of his property on December 16, 2003. (Plaintiff's Dep. at p.33).
34. Offenders at Pontiac are notified via the Orientation Manual that continued noncompliance with the noise policy will result in limitation of personal property. (Quinley Affidavit).
35. Plaintiff testified that when an offender receives three disciplinary reports within a month's time span, the policy at Pontiac is to confiscate the offender's property for three full days, however legal property is supposed to be returned sooner, after 24 hours. (Plaintiff's Dep. at p.33).
36. Defendant French does not specifically recall whether or not he confiscated Plaintiff's personal property on December 16, 2003, but states that if he did so, it was because he was ordered to do so or because he determined that the Plaintiff's behavior warranted same. (French Affidavit).
37. It is undisputed that as of December 16, 2003, Plaintiff had received at least three disciplinary reports within the last month. (Dep. at p.33; see also Burger Affidavit and McFarlen Affidavit and the attached disciplinary reports).
38. When an offender's personal property is confiscated due to disciplinary problems, all property is taken from the cell and placed in a secured area. Legal documents are supposed to be returned 24 hours later and the remaining property is to be returned 48 hours after that. (French Affidavit).
39. As a Correctional Lieutenant, Defendant French did not make this policy, however he does enforce it. (French Affidavit).
40. At his deposition, Plaintiff indicated that the only evidence he has that the defendants' actions were retaliatory in nature is the chronology of events. (Dep. at pp. 39-40).

Discussion and Conclusion

The plaintiff's First Amendment freedom of speech claim based on Defendant Messina's alleged November 20, 2003 statement fails as a matter of law. Prisoners have a First Amendment

5

right to freedom of speech. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977). However, "First Amendment guarantees are applied in light of the special characteristics of the environment." *Procunier v. Martinez*, 416 U.S. 396, 409-410 (1974). "[A] prison inmate retains only the First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penalogical objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, XXX (1974). A restriction on a prisoners' First Amendment rights will be upheld if it is "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) *citing Turner v. Safely*, 482 U.S. 78, 89 (1987).

In this case, Plaintiff's First Amendment free speech claim relates to a single statement that Defendant Messina allegedly made to him on November 20, 2003. (Undisputed Fact #8). Plaintiff alleges that he was discussing the death of another inmate with his cell mate when Defendant Messina walked by and said "shut up or you'll be next." (Undisputed Fact #7). There is no evidence of any further incident between Plaintiff and Defendant Messina with respect to the discussion of this subject. The Constitution does not protect against all arbitrary actions of prison officials, but only those that cause the plaintiff to suffer a deprivation of a constitutionally protected liberty, life or property interest. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995). Simple verbal harassment does not deprive a prisoner of a protected liberty interest. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 1999). Allegations that an official used vulgar and derogatory language in reference to an inmate are not actionable under 42 U.S.C. 1983, *Id*., even if such language was unprofessional and inexcusable. *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987). Accepting as true, for purposes of this motion only, Plaintiff's allegation that Defendant Messina told him to "shut up or you'll be next," Plaintiff's First Amendment claim still fails because he has not demonstrated that Defendant Messina deprived him of a liberty interest. Under *DeWalt* and *Patton*, Plaintiff has no liberty interest in being free from verbal harassment or derogatory language, even if unprofessional and inexcusable.

Defendant Messina denies that he told Plaintiff to "shut up or you'll be next" in an attempt to prevent Plaintiff from talking to his cell mate about the death of another inmate. Plaintiff has had the opportunity, but he has placed nothing in the record that indicates he was punished for his speech. Therefore, there is no First Amendment violation. Mere threats are not actionable as an Eighth Amendment violation. Second, the plaintiff does not dispute that the only "action" taken by defendant Knisley was his threat. The plaintiff was not hindered from reporting the threat, filing his grievance or pursuing this lawsuit. He does not maintain that any other adverse action was taken against him. Even if this was a retaliation claim (but it does not appear that the plaintiff has asserted this claim as a retaliation claim), the court has found no case, and the plaintiff offers none, where a threat alone can constitute the "retaliatory act" to form the basis of an inmate's retaliation claim. If defendant Messina had made good on the threat, his threat would have been relevant evidence of retaliatory motive, but the threat alone is not enough to constitute retaliatory conduct under these circumstances. *See Dewalt V. Carter,* 224 F.3d 607, 612 (7th Cir. 2000)(citations omitted)(racially derogatory language alone does not violate the Constitution, but can be evidence of racial animus to support an equal protection claim); *Sierakowski v. Ryan*, 223 F.3d 440, 443 (7th Cir. 2000)(To show standing, the plaintiff must have suffered " . . . an 'injury in fact'–an invasion of a legally recognized interest which is concrete and particularized, actual or

imminent, and not conjectural or hypothetical . . .”). If Messina did actually say these words to the plaintiff, it would be unprofessional and inexcusable for the officer to have said "you're next" when discussing a murder. However, this is a case of no harm/no foul--just the kind of trash talking that occurs in a prison setting. Plaintiff's First Amendment free speech claim based on Defendant Messina's alleged November 20, 2003 statement fails as a matter of law.

Furthermore, Plaintiff's First Amendment retaliation claim also fails as a matter of law with respect to all Defendants. Not every claim of retaliation by a disciplined prisoner who has filed a grievance against prison officials will state a cause of action. *Cain v. Lane*, 857 F.2d 1139, 1143, at n.6 (7th Cir. 1988). In order to prove a retaliation claim, a plaintiff must first show that the activity prompting the retaliatory act was protected. *Buise v. Hudkins*, 584 F.2d 223, 231 (7th Cir. 1978), *cert. denied*, 440 U.S. 916 (1979). Filing prison grievances is a protected activity. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Second, a plaintiff must demonstrate that his protected activity was a "substantial and motivating factor" in an adverse decision or action taken against him. *Id*. Merely alleging the ultimate fact of retaliation is insufficient. *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985). In this case, Plaintiff's First Amendment retaliation claims fail as a matter of law because he has not demonstrated that his protected activity was a "substantial and motivating factor" in any of the adverse actions taken by the defendants. Plaintiff has done nothing more than allege the ultimate fact of retaliation. Plaintiff relies on the false logic of *post hoc ergo propter hoc*. Plaintiff cannot simply allege that because certain events occurred (he was disciplined for violating prison rules) after he filed a grievance or made a complaint, that those latter events were retaliation because of the grievance(s). *See Bermudez v. TRC Holdings, Inc*., 138 F.3d 1176 (7th Cir. 1998) (if *post hoc ergo propter ho*c were sufficient to support a finding of retaliation, every employee would file a discrimination charge to get a little unemployment insurance).

a.    Allegations against Defendant Messina

Plaintiff testified that Defendant Messina began harassing him as soon as Plaintiff arrived at Pontiac. (Undisputed Fact #3). This was before Plaintiff engaged in any constitutionally protected conduct at Pontiac Correctional Center. Plaintiff first filed a grievance complaining of Defendant Messina's conduct on August 25, 2003. (Undisputed Fact #5). In his grievance dated August 25, 2003, Plaintiff wrote "[o]n the above date and dating back to July 2, 2003, C/O [Messina] has been harassing me from the first day of my being here in Pontiac it seems as though he has some sort of problem with me..." (Undisputed Fact #6). Defendant Messina issued Plaintiff a disciplinary report on November 20, 2003. (Undisputed Fact #15). On that day, Defendant Messina keyed open the Plaintiff's cell so Plaintiff could attend the law library. (Undisputed Fact #11). When exiting the cell, Messina alleges and Plaintiff disputes, Plaintiff intentionally brushed against Defendant Messina in a hostile and offensive manner, even though the cell door was completely open to allow his passage without making any physical contact. (Undisputed Fact #12). The offense 102-Assaulting any Person is defined as "causing a person, substances or an object to come into contact with another person in an offensive, provocative or injurious manner..." (Undisputed Fact #13). Pursuant to Departmental Rule 504A, an employee who observes an offender committing offense 102-

7

Assaulting any Person shall promptly prepare a disciplinary report. (Undisputed Fact #14). If Plaintiff did commit this act, Messina did was required of him. (Undisputed Facts #15 & 16). Defendant Messina prepared the a disciplinary report because he observed Plaintiff violate departmental rules and not for any other reason. (Undisputed Fact #16). If Plaintiff committed the assault, Defendant Messina had a duty to issue Plaintiff the disciplinary report once he observed Plaintiff's conduct on November 20, 2003.

Even if the disciplinary charges were false, in *Hanrahan*, the Seventh Circuit stated that allegations of falsified disciplinary reports do not state a claim, provided that the required procedural due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974), are met. *Id.* "Procedural due process protections are the major means of protection prisoners have from arbitrary government actions . . ." *Id.* at 141; *see also McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999)("[W]e have long held that as long as procedural protections are constitutionally adequate, we will not overturn a disciplinary decision solely because evidence indicates the claim was fraudulent."). In this case, there is no indication that the plaintiff did not receive due process But even if Plaintiff did not commit the "assault", the question then becomes what constitutional deprivation did he suffer. What protected liberty interest was he deprived of? After being found guilty of the disciplinary charge of assault, his punishment was four months C grade, four months segregation, loss of commissary for four months loss of audio/visual for four months. *Whitford v. Boglino*, 63 F.3d 527, 533 n.7 (7th Cir. 1995)(Demotion in grade status does not implicate federal due process rights). Disciplinary segregation itself does not necessarily implicate the due process clause, if "such segregation does not impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472 (1995); *Wagner v. Hanks*, 128 F.3d 1173, 1176 (7th Cir. 1997); *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998)(Loss of commissary privileges does not affect a liberty or property interest); *Tullis v. DeTella*, 1999 WL 90650 at *4 (N.D. Ill. 1999)(Loss of audiovisual privileges is not an atypical and significant deprivation in relation to ordinary incidents of prison life). Messina is entitled to summary judgment as a matter of law.

b.  Allegations against Defendants Burger and McFarlen

Plaintiff was found guilty of assaulting Defendant Messina and the discipline imposed included a transfer to segregation. (Undisputed Fact #17). Each segregation unit at Pontiac houses between 150 and 300 offenders. (Undisputed Fact #20). In the segregation unit at Pontiac, Plaintiff was subject to the facility noise policy. (Undisputed Fact #19). Pursuant to the facility noise policy, yelling and banging on cell doors can result in the receipt of disciplinary reports and progressive discipline. (Undisputed Fact #19). The purpose of the noise policy is to enable security staff to maintain order and ensure the safety and security of all offenders and staff in the living unit. (Undisputed Fact #21). Without a noise policy and the continued enforcement of said noise policy, the noise level in the living unit would be unacceptably high. (Undisputed Fact #21). Offenders are notified of the facility noise policy via the Orientation Manual. (Undisputed Facts #19). Each offender housed at Pontiac receives an Orientation Manual upon his arrival at Pontiac Correctional Center. (Undisputed Fact #18). While housed in the segregation unit at Pontiac, Plaintiff received four disciplinary reports for "excessive noise" including two from Defendant Burger and two from Defendant McFarlen. (Undisputed Fact

8

#22). Plaintiff was not the only prisoner receiving excessive noise tickets from Defendants Burger and McFarlen. (Undisputed Facts # 27 & 31). Plaintiff testified that he was aware that Defendant McFarlen issued excessive noise tickets to other offenders as well as himself. (Undisputed Fact #27). In a letter dated December 30, 2003 to Major Quinley, Plaintiff complained that Defendants Burger and McFarlen were both writing up prisoners for talking. (Undisputed Fact #31). Plaintiff received his first excessive noise ticket from Defendant McFarlen on November 22, 2003. (Undisputed Fact #23). Defendant McFarlen issued Plaintiff a second ticket for excessive noise on December 14, 2003. (Undisputed Fact #25). Defendant Burger issued Plaintiff excessive noise tickets on December 13, 2003 and December 27, 2003. (Undisputed Fact #28). Both Defendants Burger and Messina issued Plaintiff excessive noise tickets because they observed Plaintiff yelling and committing the offenses charged, and not for any other reason. (Undisputed Facts # 26 & 30). The facts on record demonstrates that Defendants Burger and McFarlen had a duty to issue Plaintiff disciplinary reports after they observed him yelling. There is no evidence that any protected conduct of the plaintiff's was a substantial and motivating factor for either Defendant in issuing Plaintiff an excessive noise ticket. Plaintiff had not filed any grievances prior to the time he received his first excessive noise ticket from Defendant McFarlen. (Undisputed Fact #24). Plaintiff claims to have filed a grievance complaining of Defendant Burger's conduct prior to receiving either disciplinary report from Defendant Burger. (Undisputed Fact #30). However, there is no evidence of such on record.

c. Alleged conduct of Defendant French

Plaintiff testified that he is suing Defendant French because Defendant French failed to do his job, as far as responding to problems brought to him concerning officers Burger and McFarlen. (Undisputed Fact #32). However, supervisory officials will not be found liable under the doctrine of respondeat superior. *Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir. 1985). In order to be held liable under §1983, a supervisor must have "had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct." *J.H. and J.D. v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003). A supervisor who is merely negligent in failing to detect and prevent employees' conduct will not be liable under §1983. *Jones v. Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). Defendant French cannot be held liable for failing to detect and prevent the alleged retaliatory acts of Defendants Burger and McFarlen.

Plaintiff also alleges that Defendant French confiscated all of his property on December 16, 2003 in retaliation of his filing grievances. (Undisputed Fact #33). Offenders at Pontiac are notified via the Orientation Manual that continued non-compliance with the noise policy will result in limitation of personal property. (Undisputed Fact #34). Plaintiff testified that when an offender receives three disciplinary reports within a month's time span, the policy at Pontiac is to confiscate the offender's property for three full days. (Undisputed Fact #35). When personal property is confiscated in this manner it is taken to a secure area. (Undisputed Fact #38). Legal property is supposed to be returned after 24 hours, and the remaining property is to be returned 48 hours after that. (Undisputed Fact #38). As a Correctional Lieutenant, Defendant French did not make this policy however he does enforce it. (Undisputed Fact #39). Defendant French does not

specifically recall whether or not he confiscated Plaintiff's personal property on December 16, 2003, but states that if he did so, it was because he was ordered to do so or because he determined that Plaintiff's behavior warranted same. (Undisputed Fact #36). It is undisputed that on December 16, 2003, Plaintiff had received at least three disciplinary reports within the last month. (Undisputed Fact #37). There is no evidence that any of Plaintiff's constitutionally protected conduct was a substantial and motivating factor for Defendant French to confiscate Plaintiff's property. To the contrary, the facts before this court demonstrate that if Defendant French confiscated Plaintiff's personal property, it was pursuant to the undisputed policy at Pontiac Correctional Center to which Plaintiff admits he was subject.

Summary judgment is proper on Plaintiff's retaliation claims. In determining whether a genuine issue of material fact exists for purposes of a summary judgment motion, all facts are construed in favor of the nonmoving party. *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 780 (7th Cir. 2007). In *Springer v. Rollinger*, however, the United States Court of Appeals for the Seventh Circuit noted that "our favor toward the nonmoving party does not relieve it of the obligation to 'do more than simply show that there is some metaphysical doubt as to the material facts." Nos. 06-2168 & 06-2516 (7th Cir. February 29, 2008), *quoting Waukesha Foundry, Inc. v. Indus. Eng'g, Inc.*, 91 F.3d 1002, 1007 (7th Cir. 1996). In *Springer*, parents who complained about their daughters' high school softball coach and who then interpreted latter events to be adverse, retaliatory acts on the part of the school. *Springer* slip opinion at p.1. The *Springer* Court noted that the parents' argument in opposition to summary judgment boiled down to an allegation that the defendants and their witnesses were lying, and that the stated reasons for the defendants' actions were phony. *Springer* slip opinion at p.9. In the absence of any independent facts, i.e. proof, to support the plaintiff's claims, summary judgment in favor of the defendants was proper. *Id. (internal citations omitted)*. Here, as in *Springer*, all the plaintiff has to go on is "a collective hunch about the defendant's motives." *Springer* slip opinion at p.10. Plaintiff has no proof to support his claims, other than his own testimony that the defendants' stated reasons for their actions are false. Here, as in *Springer*, plaintiff has no personal knowledge of the defendants' motives for each act, nor can he point to documents, statements, or other proofs of retaliation. Plaintiff testified at his deposition that the only evidence he has that the defendants' actions were retaliatory in nature is the chronology of events. (Undisputed Fact #40). However, "timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim." *Springer*, slip opinion at p.11, *quoting Brown v. Ill. Dep't of Natural Res.*, 499 F.3d 675, 685 (7th Cir. 2007). Plaintiff has failed to submit any proof of the defendants' retaliatory motive, and his retaliation claims fail as a matter of law.

Furthermore, Defendants are entitled to qualified immunity from suit. Government officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 817, 818 (1982). To determine whether an official is entitled to qualified immunity, a two part inquiry is required: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right alleged to have been violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The relevant, dispositive inquiry in determining whether a right is clearly established is

whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. *Id*. at 202. An official who makes a reasonable mistake as to what the law requires is entitled to the defense of qualified immunity. *Id*. 205.

The Defendants' undisputed material facts demonstrate that they did not retaliate against Plaintiff for engaging in any constitutionally protected conduct. To the extent these facts remain undisputed the defendants are entitled to qualified immunity from suit on plaintiff's retaliation claim. Furthermore, pursuant to *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 1999) and *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987), it has not been clearly established that a single statement such as "shut up or you'll be next" can deprive a person of a liberty or property interest. If this court determined that Defendant Messina's alleged statement did deprive the plaintiff of a liberty or property interest, that would represent a new announcement of law of which Defendant Messina could not have been aware. Defendant Messina is also entitled to qualified immunity from suit on Plaintiff's free speech claim relating to the alleged November 20, 2003 statement.

It is therefore ordered:

1. The defendant's motion for summary judgment is granted [75]. The clerk of the court is directed to enter judgment in favor of the defendant and against the plaintiff. Any pending matters are denied as moot, and this case is terminated, with the parties to bear their own costs.
2. If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).

Enter this 17th day of February 2010.

_____s/Harold A. Baker_____
Harold A. Baker
Central District of Illinois